USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___
DATE FILED: 2/6/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES DUCKETT,

Plaintiff,

-v-

MIKE WILLIAMS,

Defendant.

No. 14-cv-3065 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff James Duckett ("Plaintiff") brings this action, which was removed pursuant to 28 U.S.C. § 1441 from the New York State Supreme Court in Manhattan, against Defendant Mike Williams ("Defendant"), alleging breach of contract and fraudulent inducement, and seeking a declaratory judgment related to Defendant's National Football League ("NFL") player contracts. Now before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is granted.

## I. BACKGROUND

### A. Facts

On November 15, 2009, Defendant and his agents, Hadley Engelhard ("Engelhard") and Wes Bridges ("Bridges"), entered into a National Football League Players Association ("NFLPA") Standard Representation Agreement ("SRA").[1] (Am. Compl. ¶ 9; *see also* Am.

[1] The facts are drawn from the Amended Complaint filed on May 29, 2014 (Doc. No. 16 (the "Amended Complaint" or "Am. Compl.")), as well as the exhibits filed in conjunction with the Amended Complaint (Doc. No. 10). In deciding Defendant's motion, the Court has considered Defendant's declaration in support of the motion (Declaration of Patrick D. Geraghty, dated July 18, 2014, Doc. No. 30 ("Geraghty Decl.")), Plaintiff's memorandum of law in opposition (Doc. No. 34 ("Opp'n")), Defendant's reply declaration (Declaration of Patrick D. Geraghty,

Compl. Ex. C, Doc. No. 10 ("NFLPA SRA").) On that same date, Engelhard and his sports agency – Enter Sports Management ("ESM") – agreed to pay Plaintiff $17,500 "for an expense advance with regard to the recruitment of [Defendant]." (Am. Compl. ¶ 4; *see also* Am. Compl. Ex. A, Doc. No. 10 ("Expense Advance").) Lastly, and also on November 15, 2009, Engelhard, Bridges, and Defendant signed a "SRA Disclosure Form for Recruiting Assistance Payments." (Am. Compl. ¶ 6; *see also* Am. Compl. Ex. B, Doc. No. 10 ("SRA Disclosure Form").) The SRA Disclosure Form states in relevant part:

> I, Hadley Engelhard/Wes Bridges (Contract Advisor), hereby disclose to Mike Williams (Player) that I, or my agency, have paid or promised to pay, directly or indirectly, the money or any other thing of value as indicated below . . . to the person(s) or entities listed below in return for recruiting or helping to recruit Player to sign a Standard Representation Agreement (SRA) . . . .

(SRA Disclosure Form.) Plaintiff's name was then listed below on the form, and the "Money or Other Thing of Value" to be paid to Plaintiff was described as "33% of net proceeds of player contracts." (SRA Disclosure Form.) Defendant signed an acknowledgment and approval on the SRA Disclosure Form, which stated:

> I, Mike Williams (Player), hereby acknowledge receiving this SRA Disclosure Form on the date set forth above, and have had adequate time to consider this information prior to signing the SRA. Thus, I am aware of the money or other things of value paid or to be paid to recruiter(s) as described above and approve of same.

(SRA Disclosure Form.)

B. Procedural History

Plaintiff commenced this action by filing a complaint in the Supreme Court of the State of New York, County of New York, on March 20, 2014, and subsequently effected service on

---

dated September 4, 2014, Doc. No. 35 ("Geraghty Reply Decl.")), and the materials submitted in support of the foregoing. Because Defendant submitted declarations in lieu of a brief in support of the motion (*see* Geraghty Decl.; Geraghty Reply Decl.), the Court considered these declarations for the purpose of assessing the legal arguments, rather than the factual assertions, contained therein.

Defendant on March 29, 2014. (Doc. No. 2 at 1, Ex. A.) Defendant then removed this action from state court on April 29, 2014 on the basis of both diversity jurisdiction pursuant to 28 U.S.C. § 1332 and – invoking the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, *et seq.* – federal question jurisdiction pursuant to 28 U.SC. § 1331. (Doc. No. 2.) Thereafter, Plaintiff filed an amended complaint on May 29, 2014,[2] asserting breach of contract and seeking a declaratory judgment and punitive damages. (Doc. No. 16.) In essence, Plaintiff claims that he is entitled to 33% of the proceeds of payments made, past and future, to Defendant in conjunction with his player contract; Plaintiff also seeks $25,000,000 in punitive damages. (*See* Am. Compl.) Following the exchange of pre-motion letters and a pre-motion conference concerning Defendant's contemplated motion to dismiss (Doc. Nos. 17, 18, 22, 23), Defendant filed the instant motion to dismiss on July 23, 2014 (Doc. No. 29). The motion was fully briefed on September 4, 2014. (Doc. Nos. 30, 33, 34, 35.)

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule

[2] Although Plaintiff attempted to file an amended pleading on May 27, 2014, that filing was deemed deficient (Doc. No. 8), and Plaintiff ultimately filed the Amended Complaint on May 29, 2014 (Doc. No. 16).

12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

## III. DISCUSSION

The Amended Complaint purports to plead three causes of action: (1) breach of contract; (2) declaratory judgment; and (3) fraudulent inducement. (*See* Am. Compl.) Because the breach of contract and declaratory judgment claims turn on whether the SRA Disclosure Form is a binding contract that entitles Plaintiff, as a third-party beneficiary, to one-third of the proceeds from Defendant's NFL contracts, the Court will first address those causes of action before turning to the fraudulent inducement claim.

### 1. Breach of Contract and Declaratory Judgment Claims

It is well-settled law in New York that "the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003) (citation omitted).[3] Absent a "meeting of the minds on all essential terms, there is no contract. This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof." *Id.* (citation omitted). This critical inquiry – namely,

[3] The parties appear to agree that New York law should apply, relying solely on New York law in their papers as to all causes of action. *See Network Enters., Inc. v. Reality Racing, Inc.*, No. 09-cv-4664 (RJS), 2010 WL 3529237, at *4 n.6 (S.D.N.Y. Aug. 24, 2010) ("Where the parties' briefs assume that New York law controls, such 'implied consent' is sufficient to establish choice of law." (citation omitted)) Accordingly, the Court will apply New York law.

whether a binding agreement has been formed – is a legal issue for the Court to resolve. *Vacold LLC v. Cerami*, 545 F.3d 114, 123 (2d Cir. 2008) ("Under New York law, whether a binding agreement exists is a legal issue, not a factual one."); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) ("In determining a party's obligations under a contract, 'the initial interpretation of a contract is a matter of law for the court to decide.'" (quoting *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996))). Moreover, the existence of a contract is a necessary element in any breach of contract claim. *See, e.g.*, *Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000) (listing elements of breach of contract claim under New York law as (1) *the existence of a contract*; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) ("Generally, a party alleging a breach of contract must demonstrate the existence of a . . . contract reflecting the terms and conditions of their . . . purported agreement." (citation and internal quotation marks omitted)). A plaintiff must similarly prove the existence of a valid contract in order to prevail on a third-party beneficiary claim. *See, e.g.*, *id.* at 1110 ("In the context of a third-party beneficiary claim, the plaintiff must establish: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [its] benefit, and (3) that the benefit to [it] is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost." (citation and internal quotation marks omitted)).

Here, because Plaintiff attached the supposed contract – the SRA Disclosure Form – as an exhibit to the Amended Complaint, the SRA Disclosure Form is "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), and may be considered by the Court in resolving the instant

motion to dismiss, *see Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit . . . ." (citing Fed. R. Civ. P. 10(c))). There is no assertion in the Amended Complaint that Plaintiff was a party to the SRA Disclosure Form, nor is Plaintiff a signatory to it; therefore, the SRA Disclosure Form does not constitute a meeting of the minds between Plaintiff and Defendant. Consequently, Plaintiff can pursue a breach of contract claim only via a third-party beneficiary theory. (*See* Am. Compl. ¶ 10 ("Pursuant to [SRA Disclosure Form], the Plaintiff Duckett is a Third Party Beneficiary whereby, the Defendant Williams agreed to pay the Plaintiff Duckett: 33% of Net Proceeds of Player Contracts.").)

Looking to the four corners of the SRA Disclosure Form and drawing all reasonable inferences in Plaintiff's favor, *see ATSI Commc'ns*, 493 F.3d at 98, the Court has little difficulty determining that Defendant never agreed to compensate Plaintiff, as a third-party beneficiary, for his alleged recruitment activities. Rather, the SRA Disclosure Form unambiguously sets forth Defendant's (1) acknowledgement that the *other signatories* to the instrument – namely, Engelhard and Bridges – had agreed to make payments to Plaintiff, and (2) approval of those payments. (*See* SRA Disclosure Form ("Thus, I am aware of the money or other things of value paid or to be paid to recruiter(s) as described above and approve of same.").) In short, the SRA Disclosure Form merely apprised Defendant of the fact that his agents, Engelhard and Bridges, had agreed to pay Plaintiff one-third of what *they* received as Defendant's agents from Defendant's NFL player contract. The SRA Disclosure Form is clearly just that – a disclosure form – and Plaintiff's attempt to twist it into a binding contract for his benefit is patently absurd and contrary to its plain language.[4]

[4] The central language of the SRA Disclosure Form states: "I, Hadley Engelhard/Wes Bridges (Contract Advisor), hereby disclose to Mike Williams (Player) that I, or my agency, have paid or promised to pay, directly or indirectly,

Even more absurd is Plaintiff's contention that Defendant must pay him one-third of the total proceeds of Defendant's NFL contracts. Once again, Plaintiff's interpretation of the SRA Disclosure Form requires a near total abandonment of reason, and it shows remarkable chutzpah on the part of Plaintiff given that Engelhard and Bridges, as NFL player representatives, were barred by the NFLPA SRA from receiving more than 3% of the proceeds of Defendant's NFL contracts. (*See* NFLPA SRA.)

Accordingly, the breach of contract claim must be dismissed. Because the declaratory judgment claim is premised on Plaintiff's entitlement to remuneration from Defendant pursuant to the SRA Disclosure Form, that claim must be dismissed, as well.

2. Fraudulent Inducement Claim

A plaintiff seeking to prevail on a fraudulent inducement claim must prove "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury." *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986) (citation and internal quotation marks omitted). A fraudulent inducement claim is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, which require "a party [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) ("[T]he complaint must: (1) specify the statements that the plaintiff contends

---

the money or any other thing of value as indicated below . . . to the person(s) or entities listed below in return for recruiting or helping to recruit Player to sign a Standard Representation Agreement (SRA) . . . ." (SRA Disclosure Form.) However, in an apparent attempt to mislead the Court, the Amended Complaint omits the critical prefatory language – specifically, "I, Hadley Engelhard/Wes Bridges (Contract Advisor), hereby disclose to Mike Williams (Player) . . . " (*id.*) – in order to make it appear as if the SRA Disclosure Form's central language embodied not a *disclosure* by Engelhard and Bridges to Defendant but, instead, a *promise* by Defendant to pay Plaintiff.

were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (citation omitted)).

In support of his fraudulent inducement claim, Plaintiff alleges that (1) Defendant "induced . . . Plaintiff . . . to act as his recruiter by falsely claiming that the Plaintiff . . . 'would be paid for his services'" (Am. Compl ¶ 24); and (2) Defendant's promise "was false in that the Defendant . . . never intended to pay the Plaintiff" (Am. Compl. ¶ 25). Additionally, with respect to reliance, Plaintiff claims in conclusory fashion that he "relied upon the aforesaid False Representation of Fact to his financial detriment to the amount of $12,884,025.00, that is 33% of the NFL Player Guarantee" (Am. Compl. ¶ 26), which is the amount of Defendant's NFL contract with the Tampa Bay Buccaneers of the NFL (Am. Compl. ¶ 15). This last allegation is nonetheless woefully inadequate to establish that Plaintiff relied to his detriment on Defendant's supposed promise that "Plaintiff would be paid for his services." (Am. Compl. ¶ 24.) Plaintiff asserts only that he relied to his detriment by virtue of never receiving the anticipated "33% of the NFL Player Guarantee" (Am. Compl. ¶ 26), and fails to allege that his reliance on Defendant's promise "caus[ed] a worsening of [his] position." Black's Law Dictionary 1403 (9th ed. 2009) (defining "detrimental reliance" as "[r]eliance by one party on the acts or representation of another, causing a worsening of the first party's position"); *see also id.* at 515 (defining "detriment" as "[a]ny loss or harm suffered by a person or property"). That Plaintiff did not receive an expected contract benefit does not constitute a detriment absent some allegation that he materially changed his position in anticipation of receiving his claimed share of Defendant's contracts. *See, e.g., Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 90 (2d Cir. 2013) (defining reliance in an equitable estoppel claim as "[r]eliance upon the misrepresentation which causes the innocent party to change its position to its substantial

detriment"); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 618 F. Supp. 2d 280, 297 (S.D.N.Y. 2009) (finding lack of detrimental reliance where party failed to present evidence that they were "induced . . . to change their position to their detriment"). No such allegation – that Plaintiff changed his position to his detriment – exists in the Amended Complaint, and Plaintiff's mere hope that he would be compensated by Defendant, without more, is legally insufficient to establish detrimental reliance. Therefore, Plaintiff's fraudulent inducement claim must be dismissed.

Additionally, New York permits parallel fraud and contract claims to be brought only "if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183-84 (2d Cir. 2007) (citation omitted). Plaintiff has failed to allege any facts to establish those three elements. As a result, Plaintiff's fraudulent inducement claim could be dismissed on this ground, as well.

3. Additional Causes of Action and Amendment

Plaintiff also partially advances an implied contract claim and an unjust enrichment claim. (Opp'n at 8–9.) However, Plaintiff concedes that the Amended Complaint "does not allege Implied Contract or Unjust Enrichment . . . ." (*Id.* at 11.) Thus, Plaintiff's arguments concerning these two claims have no bearing on the Court's decision to grant Defendant's motion to dismiss, and, in any event, the Amended Complaint lacks factual allegations sufficient to support either claim.

Additionally, on the last page of Plaintiff's brief in opposition to the instant motion, Plaintiff requests leave to amend. (*Id.*) Although a party may amend its pleading once as a

matter of right so long as they comply with the conditions of Rule 15(a)(1), *see* Fed. R. Civ. P. 15(a)(1), Plaintiff has already amended the operative pleading (*see* Am. Compl.). Therefore, the Court looks instead to Rule 15(a)(2), which permits a party to amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although generally "[t]he court should freely give leave when justice so requires," *id.*, there are times when granting such leave may be inappropriate, *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) ("[A] motion to amend should be denied if there is an apparent or declared reason – such as undue delay, bad faith or dilatory motive[], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." (alterations in original) (citation and internal quotation marks omitted)). And "[w]hile pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, Nos. 06-cv-643, 07-cv-8686, 07-cv-8688 (GEL), 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (citations and internal quotation marks omitted). To grant leave to amend after a plaintiff has had ample opportunity to amend "would be condoning a strategy whereby plaintiffs hedge their bets by holding . . . evidence back in the hopes of having another bite at the proverbial apple." *In re Crude Oil Commodity Litig.*, No. 06-cv-6677 (NRB), 2007 WL 2589482, at *4 (S.D.N.Y. Sept. 7, 2007) (citation and internal quotation marks omitted).

Here, Plaintiff has not even suggested that an *additional* amendment would include any further factual allegations to support the two added causes of action raised in Plaintiff's opposition. Rather, Plaintiff simply claims that "both Implied Contract and Unjust Enrichment

will be recited in the Amended Complaint." (Opp'n at 11.) The facts alleged in the operative pleading do not support these additional causes of action, and Plaintiff's suggestion that "Implied Contract and Unjust Enrichment" claims will be added in an amended pleading is merely an attempt to plead his now-dismissed breach of contract claim by another name. Moreover, Plaintiff has not even suggested that additional facts would be alleged in any subsequent second amended complaint. Thus, the Court finds that providing Plaintiff with an additional opportunity to amend would be an exercise in futility. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . to the district court . . . how amendment would cure the pleading deficiencies in its complaint."); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (denying leave to amend where "plaintiffs have identified no additional facts or legal theories – either on appeal or to the District Court – they might assert if given leave to amend" (footnote omitted)); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam) ("A counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure . . . to make a showing that the complaint's defects can be cured."); *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."). Accordingly, Plaintiff's request to amend is denied.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss is granted. As the Court noted at the pre-motion conference on July 2, 2014, Plaintiff's counsel's conduct would appear to justify sanctions given the patently baseless allegations contained in the Amended Complaint,

including the willful misrepresentation of the SRA Disclosure Form. Nevertheless, because the Court is willing to give Plaintiff's counsel the benefit of the doubt, and because Defendants have not sought sanctions (*see* Conf. Tr. 12:5–13, July 2, 2014), the Court will not impose them now. However, the Court admonishes Plaintiff's counsel to seriously consider his obligations as a member of the bar and an officer of the Court in any future proceedings in this District.

The Clerk of the Court is respectfully directed to terminate the motions pending at docket entry 29, enter judgment in favor of Defendant, and close this case.

SO ORDERED.

Dated: February 6, 2015
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE